UNITED STATES DISTRICT COURT

**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **GIOVANNI LARA,** Petitioner-Defendant, | : | Case No. **00-554ML** |
| v. | : | |
| UNITED STATES OF AMERICA, Respondant, | : | |

REPLY TO GOVERNMENT'S RESPONSE TO PETITIONER'S MOTION TO REOPEN ORIGINAL SENTENCE UNDER 28 U.S.C. § 1651

Now comes the Petitioner, **Giovanni Lara,** Pro-se, (herein after "Petitioner"), and hereby respectfully files his reply to the government's response to his Motion to Reopen Original Sentence under 28 U.S.C. § 1651. In support thereof, it is stated;

Relevant facts and law:

Petitioner moved this court to "Reopen and Supplement his original Section § 2255 motion, pursuant to Rule 60(b) of the Federal Rules of CIvil Procedure, or in the alternative, under 28 U.S.C. § 1651," the Writ of Error Corim Nobis which provides a remedy to correct "[e]rror of the most fundamental character" which occurred in a criminal proceeding. United states v. Morgan, 346 U.S. 502, 506 (1954).

In the government's response to Petitioner's motion to reopen original sentence under 28 U.S.C § 1651. The government made the following relevant statments: "Lara is not arguing that the original habeas petitioner was not properly adjudicated" (At 13). "Lara could have raised Holloway in his original § 2255" (At 16). "Holloway has not been declared by the Supreme Court be retroactive to cases on collateral review." (At 15). "Lara petition does not meet the prerequistes under the law governing writs of error coram nobis." (At 16). "Lara has exhausted every possible avenue to change his conviction and sentence."

Relevant Law:

Petitioner was convicted of carjacking with intent to cause death or serious bodily harm, resulting in death. Section 2119(3), 18 U.S.C. However, under the misunderstood/misinterpretation of the statute, the court failed to explain the intent element of § 2119(3) to the jury. Given this proper understanding of the intent element — taken together with the evidence, there is no factual basis for a conviction of § 2119(3). In Holloway v. United States, 526 U.S. 1 (1999), the Court confronted the meaning of the phrase "with the intent to cause death or serious bodily harm" in the carjacking statute. The question in Holloway, was "whether that phrase requires that the

government prove the defendant had an unconditional intent to kill or harm in all events, or whether it merely requires proof of an intent to kill or harm if necessary to effect a carjacking." Id. at 3. The Court answered that question as follows:

> "The specific issue in this case is what sort of evil motive Congress intended to describe when it issued the words 'with the intent to cause death or serious bodily harm'... more precisely, the question is whether a person who points a gun at a driver, having decided to pull the trigger if the driver does not comply with the demand for the car keys, possesses the intent, at that moment, to seriously harm the driver. In our view, the answer to that question does not depend on whether the driver immediately hands over the keys or what the offender decides to do after he gives control over the car. At the relevant moment, the offender plainly does have the forbidden intent."

Id. at 6-7. In short, because this case went to trial, the government had to prove beyond a reasonable doubt the Petitioner (1) took or attempted to take the victim's car through force and violence, or by intimidation, (2) that Petitioner acted with conditional or unconditional intent to cause death or serious bodily harm, and (3) that Petitioner's actions resulted in the death of the victim.

This interpretation of the carjacking statute stems from the several references in <u>Holloway,</u> as in the quotation above, to the carjacking defendant's intent as of the "moment" of a carjacking. The Court summarized its holding as follows:

> "The intent requirement of § 2119 is satisfied when the government proves that at the moment the defendant demanded or took control over the driver's automobile the defendant possessed the intent to seriously harm or kill the driver if necessary to steal the car (or, alternatively, if unnecessary to steal the car)."

Holloway, 526 U.S. at 12 (emphasis added)

"A Court's interpretation of the proof required must be applied on collateral review to prevent a violation of the Due Process Clause, which guards against convicting a defendant without proof beyond a reasonable doubt on each element of [his] crime." Fiore v White, 531 U.S. 225, 228-29 (2001). Here, The government cites no legal authority or case law supporting that Holloway does not apply retroactively on collateral review. (Emphasis added). See, Rivers v Roadway Express, Inc, 511 U.S. 218, 312-313 (1994) ("A Judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision giving rise to that construction"). Thus, retroactivity is not an issue here.

Petitioner filed a § 2255 motion, as relevant here alleging that subsection (3) of the Federal Carjacking Statute ("death resulted") was not submitted to the jury for proof beyond a reasonable doubt. In denying Petitioner's challenge of the validity of his conviction, this court stated in relevant part, Petitioner's "reliance on Apprendi is misplaced... is not retroactively applicable on collateral review." (Order, at 8). It is here, Petitioner contends the § 2255 court did not properly adjudicate his claim,

by deciding the case on constitutional rather than statutory grounds. Cf., Ashwanda v TVA, 297 U.S. 288, 346-47 (1936)(articulating principle that case should be decided on statutory grounds before reaching constitutional questions).

DISCUSSION

In this case there is no question that the Petitioner was sentenced to a mandatory sentence under an uncharged and unproved 18 U.S.C. § 2119(3). The heart of the government's argument is that Petitioner should bear the burden -a heavy one, of serving the rest of his life unlawfully in prison for the government's error in successfully urging the court to sentence Petitioner to a mandatory term of life in prison; despite the fact that it lacked authority to do so. The government's hard line position on the rule is that Holloway is not retroactively applicable to cases on collateral review.

But far worse is the government's modus operandi in this case of placing the blame, and the consequences, of its own mistake on the accused and the convicted. It is the government which prosecuted Petitioner and which sought an illegal sentence after his conviction. The government forgets its duty to all citizens, including those accused and even convicted of crimes, to ensure justice under law. See, Brady v Maryland, 373 U.S. 83, 87 (1963) (society wins not only when the guilty are convicted but when criminal trials are fair; our system...of justice suffers when any accused is treated unfairly).

The Petitioner therefore makes only the following brief response to the goverment's opposition:

1) Granting the writ here is appropriate here because Petitioner has no other remedy in that he does not meet the requirement for a succesive petition under 28 U.S.C. §§ 2255 and 2244;

2) Petitioner can resort to the All Writs Act under 28 U.S.C. § 1651 where the restrictions under the circumstances of the case, offend seperation of powers principles or the Article III grant of judicial power. Here, the writ of coram nobis plainly gives the court authority to correct its own sentencing error, and no interpretation of congressional statutes, including 28 U.S.C. § 2255 and § 2244, can deprive the court of that authority;

3) The Petitioner is not limited to seeking a writ of habeas corpus under 28 U.S.C. § 2241 where 2255 is inadequate or ineffective. In short, because a habeas corpus petition under § 2241 is direct to the court in the district in which the Petitioner is held, rather than to the sentencing court, Petitioner's motion to correct the sentencing error is more properly brought by a writ of coram nobis in this court;

It should be noted that the government also violated its duty to Petitioner to see that he is prosecuted and sentenced in accordance with applicable law. The Government's opposition, contradicts the wording of the statute and ignores the clear legislative intent to impose real limits on a district court's otherwise broad sentencing discretion not permitting the defendant to be subject to a mandatory sentence unless the jury so decided. see, Fifth Amendment. Thus, the government arguments are patently frivolous-sophism, in bad faith, and violates its duty to ensure the Petitioner's prosecution in accordance under the law.

There is no question that Petitioner has shown cause to excuse procedural default under these circumstances. The specific facts of this case includes the collective misinterpretation of the statute by all parties. Nevertheless, it was the government's burden to seek a jury's finding if it sought to impose a mandatory life sentence. But had Petitioner or his attorney been aware

of the government's error (misinterpretation of statute) in seeking the mandatory sentence without a jury verdict, clearly the Petitioner and his counsel would have objected to the imposition of the mandatory sentence at the time it was imposed. There would have been no strategic reason not to do so. Cf., Bousley v United states, 523 U.S. 614 (1998)("if the record disclosed that at the time of the plea, neither the accused, nor his counsel, nor the district court correctly understood the essential elements of the crime with which he was charged, then the plea was invalid under federal constitution.")

The government cannot establish that the sentencing error was less than fundamental. On the day of Petitioner's sentencing, the court had no authority to impose a mandatory life sentence and yet that is what Petitioner is serving. That is as "actual" as prejudice can get. Compare, United States v. Rosario-Diaz, 202 F. 3d 54,63 (1st Cir. 2000) ("[C]arjacking is a specialized offense, requiring a specific criminal act and a narrow mens rea.") Here, to cause death or bodily harm. Moreover, this is clearly "a situation in which the circumstances call into question the fundamental basis of the court's actions with respect to the Petitioner." Compare, Dretke v Haley, 541 U.S. 386 (2004)(Justice Stevens, with whom Justsices Kennedy and Souter join dissenting):

> "...as a result of a congeries of mistakes made by the prosecutor, the trial judge and his attorney, Respondent was also erroneously convicted and sentenced [of an aggravated crime]...The state concedes that respondent does not qualify... There is no factual basis

> for respondent's conviction..., it follows inexorably that respondent has been denied due process of law. [Thompson v Louisville, 362 U.S. 199; Jackson v Virginia, 443 U.S. 307]. And Because that constitutional error clearly and concedely resulted in the imposition of an unauthorized sentence, it also follows that respondent is a "victim of a miscarriage of justice."

Id., at 396-97.

> ..."The state has decided to oppose the grant of habeas relief in this case even as it concedes that respondent has already served more time in prison than the law authorized, might cause some to question whether the state has forgotten its overriding "obligation to serve the cause of justice."

Id., at 398.

> "...the respondent should be entitled to immediate relief...The case also merits this further comment concerning the larger obligation of state or federal officials when they know an individual has been sentenced for a crime he did not commit."

Id., at 399 (Justice Kennedy, dissenting).

In sum, the facts of this case underscores the falsity of the government's position. The fact remains, the court was without authority to impose the mandatory sentence urged by the government.

The record clearly shows Petitioner was only convicted in this case of violating § 2119(1) authorizing a sentence of not more than 15 years. Thus, Petitioner is suffering collateral consequences from this fundamental error in this case. No court has found this statutory error to be harmless because the new interpretation would apply

on re-sentencing. There can be no doubt that, had the law been correctly applied on the date of his initial sentencing, Petitioner could not have been sentenced to a mandatory term of imprisonment. Therefore, Petitioner clearly continues to suffer collateral consequences of that error, as he continues, to serve the unauthorized sentence. Assuming the petitioner is resentenced in accordance with the correct interpretation of the statute, the law to be applied on re-sentencing will be the law that should have been applied on the date of his initial sentencing. In this case, the actual "offense of conviction" is 18 U.S.C. § 2119(1), with a statutory range of not more than 15 years imprisonment.

Closing Statement

The government's opposition evinces a single minded effort to win at all costs and a corresponding abdication of its duty to Petitioner to seek justice under the law. The government's position is nowhere clearer than its failure to admit that it wrongly urged the court to sentence Petitioner to a mandatory life sentence where it had no authority to do so. The government clearly repudiated any duty to Petitioner.

> " A United States District Attorney carries a double burden he owes obligation to the government, just as any attorney owes an obligation to his clients to conduct his case zealously. But he must remember also that he is representative of a government dedicated to fairness and equal justice to all and, in this respect, he owes a heavy obligation to the accused. Such representation imposes an overriding obligation of fairness so important that Anglo-American criminal law rests on the foundation: better the guilty escape than the innocent suffer."

Dunn v United States, 307 F.2d 883, 885 (5th Cir 1962). Nor does the nature of the crime excuse the government's violation of its duty to the defendant. Silva v Brown,416 F.3d 980, 991-92 (9th Cir. 2005)(The "atrocious nature of the crime with which [a defendant] was charged cannot diminish the prosecutor's--and our's court's-- duty to ensure that all persons accused of crimes receive due process of law").

The ABA model rules of professional conduct specifically provide that "A prosecutor has the responsibility of a minister of justice and not simply that of an advocate. This responsibility carries with it specific obligations to see that the defendant is accorded procedural Justice and that guilt is decide upon the basis of sufficient evidence." ABA Model Rule Of Professional Conduct 3.8, comment.

The Government's opposition should be Stricken in its entirety and the government should be admonished that it must consider its obligation to Petitioner in asserting any further arguments in connection with this proceeding. Alternatively, The Petitioner request that the government be required to state on the record that it understands its obligation to Petitioner under the case law and the rules of professional conduct, that it will fulfill that obligation in future proceedings on this matter and how the positions it has taken thus far in this proceedings fulfill that obligation.

CONCLUSION

Therefore for all the reasons set forth herein and in the original filed motion under 28 U.S.C. § 1651 the instant motion should be granted, or whatever relief this Court deems just and proper.

Respectfully Submitted

Giovanni Lara

Giovanni Lara, pro-se

# CERTIFICATE OF SERVICE

I, Giovanni Lara, hereby certify that I have served a true and correct copy of the foregoing:

Reply to Government's Response (§ 1651)

Which is deemed filed at the time it was delivered to prison authorities for forwarding to the court, Houston vs. Lack, 101 L.Ed.2d 245 (1988), upon the court and parties to litigation and/or his/her attorney(s) of record, by placing same in a sealed, postage prepaid envelope addressed to:

Office of the District Attorney
For the District of Rhode Island

and deposited same in the United States Postal Mail at the United States Penitentiary,

Signed on this 6th day of Sept, 2007

Respectfully Submitted,

Giovanni Lara
Giovanni Lara

REG. NO. 04227-070